# JAMES T. McGRAW.

## *vs.*

# UNION TRUST AND DEPOSIT COMPANY, ET ALS.

*Judgment entered to use of third party: rights of innocent parties.*

Where a judgment creditor enters the judgment to the use of a third party, in such a way that such third party may use it for his own purposes, the judgment creditor can not afterwards complain, as against innocent parties if, as a matter of fact, such judgment is so used by the party to whose use it was entered.                                        p. 509

*Decided April 3rd, 1918.*

The facts are stated in the opinion of the Court.

Appeal from the Circuit Court for Garrett County. In Equity. (HENDERSON, J.)

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Reninger & Offutt* and *W. H. Wolfe* filed a brief for the appellant.

*Edward H. Sincell* and *Frederick A. Thayer* filed a brief for the appellees.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Garrett County, dissolving an injunction which had been previously granted and dismissing the plaintiff's bill of complaint, with costs.

The plaintiff is a non-resident of the State and a resident of the State of West Virginia.

The defendants, the Union Trust and Deposit Company, a corporation, J. N. Camden, S. D. Camden and Annie T. Spilman, trustees, under the last will of J. N. Camden, deceased, and Howard W. Showalter, are non-residents of the State and reside in the State of West Virginia; the First National Bank of Oakland, and Bert C. Scott, the sheriff of Garrett County, the other defendants in the case, are residents of the State, and reside in Garrett County, Maryland.

The object of the proceeding, as will be seen by the prayer of the bill, is to restrain and enjoin the execution and collection of a judgment held by the First National Bank of Oakland, against the plaintiff, John T. McGraw, and to strike out the judgment and the use to which the judgment had been entered, and to enter the judgment, "satisfied in full."

The fact of the case, and the basis of the suit, appear to be these: On the 28th of May, 1914, a non-resident attachment was issued out of the Circuit Court for Garrett County, upon the record of a judgment obtained by the Union Trust and Deposit Company and others against John T. McGraw, in the Circuit Court of Wood County, West Virginia, and the Sheriff attached certain property of the defendant, in Garrett County. Subsequently a judgment in the short note case was obtained in favor of the plaintiff against the defendant for the sum of six thousand one hundred and ten dollars and thirty-two cents ($6,110.32) and a judgment of condemnation for the property attached, in the attachment case.

On December 22, 1914, an execution was issued to enforce the collection of the judgment by a sale of the property and the property was advertised for sale.

On January 18, 1915, the sheriff made the following return upon the execution:

"After making the levy and advertising as per schedule hereto annexed, the within execution and costs were paid by Howard W. Showalter and the same is hereby returned to be entered to his use by order of the plaintiff's attorney."

On February 9, 1915, the judgment was entered to the use of the First National Bank of Oakland by order of the attorney of Howard W. Showalter, and on the 13th of October, 1915, a writ of *venditioni exponas* was issued at the instance of the plaintiff, for whose use the judgment had been entered, commanding the sheriff to complete the execution which he had begun, by the selling of the property; and it is this sale, which the plaintiff seeks to restrain and also to have the judgment entered satisfied.

The relief sought by the plaintiff's bill is based upon the contention that the judgment in question was paid by his money and that it should have been entered "satisfied" upon the records of the Court, and not to the use, in the first instance of Howard W. Showalter and subsequently, by Showalter to the use of the First National Bank of Oakland.

The defendant, the First National Bank of Oakland, in its answer denies the material allegations of the bill, and in the third and fourth paragraphs of the answer, aver as follows:

"(3) This defendant denies that on or about the 6th day of November, 1915, the said McGraw, through his agent, Geo. A. Hechner, paid and satisfied said judgment and costs, or any part thereof to this defendant, or to any person for the use of this defendant, it being the only party entitled to the payment thereof, and denies that said McGraw supposed, or ever had any reason to suppose, that said judgment had been fully paid and satisfied, and denies that said McGraw was, or ever has been, entitled to have said

judgment entered 'satisfied' upon the docket of said
Court, and further answering said third paragraph,
this defendant says that the said McGraw had full
knowledge and that Gilmor S. Hamill, his attorney,
of record in said attachment proceedings, also had
full knowledge that the said Howard W. Showalter
had had said judgment entered to his own use on the
18th day of January, 1915, and that said McGraw
and Gilmor S. Hamill, his attorney of record in said
case, also had full knowledge that said judgment had
been entered to the use of this defendant, The First
National Bank of Oakland, Maryland, and this de-
fendant charges and avers that it was not necessary
to obtain the consent or authority of the said McGraw
to so enter said judgment to the use of either the said
Showalter or this defendant.

"(4) This defendant says that the said McGraw
and his attorney of record in said case had full knowl-
edge of each and every entry and transaction con-
nected with said judgment and case, and have been
fully cognizant of the course of said case ever since the
rendition of said judgment and knew full well that the
same was entered: first, to the use of the said Showal-
ter; and, second, by his direction entered to the use of
this defendant, and knew that this defendant was
entitled to have and receive payment thereof, and fur-
ther answering said paragraph, this defendant denies
that said judgment was fraudulently entered to the
use of either the said Showalter or this defendant,
but was entered, as hereinbefore shown, to its use for
value, and in good faith, and that it is the owner and
holder thereof, and that the said McGraw is not enti-
tled to any relief whatever at the hands of this Court."

There can be no doubt as to the law applicable to this
character of case, and the questions here involved, it will be
seen, are largely those of fact.

The Court below held, upon a consideration of the testi-
mony that the plaintiff so acted with the judgment in ques-

tion, as to preclude now his obtaining the aid of a Court of Equity, to prevent its collection from his property, and denied the relief sought by the bill.

We have examined and considered the testimony, set out in the Record and concur in the conclusion reached by the Court below.

The opinion of JUDGE HENDERSON, who decided the case in the Court below, fully covered every question of law and of fact, involved in the controversy and presented by the Record.

It is as follows:

"There are two questions which must be decided in this case:

"(1) Whose money paid the judgment of the Union Trust & Deposit Company vs. McGraw?

"(2) If it be found that John T. McGraw's money paid the judgment, has he so acted as to give the First National Bank of Oakland the right to claim payment of it a second time as against him?

"As to the first question there seems now to be no doubt, except that which might be inferred from the uncertainty and confusion of both McGraw's and Showalter's testimony as to dates, places and many of the circumstances surrounding the transactions. The record evidence supplements that of Mr. McGraw and Mr. Showalter, and from this and that together it appears that $5,000.00 of the $6,320.86 which it took to pay the Union Trust Co. judgment and costs came from the discounting for McGraw of a note of Frank J. Garvan loaned him by Garvan, which was afterwards paid by Garvan, and that $1,395.86 was charged by the First National Bank of Fairmont to McGraw's account, and that McGraw accepted a draft for $7,081.11 on January 16th, 1915, at 30 days sight, drawn upon him by the bank to cover this and other items set out in Exhibit J. T. M. No. 3. The cashier of the bank to a large extent corroborates this evidence, and there is no contradiction except certain

statements by Showalter and Hechmer and McGraw, which, if taken at the strongest against them, might bear upon the question of fraud upon their part, but could not change the fact that McGraw's money paid the judgment, and that at the time of payment he could have required its release and satisfaction upon the dockets and records of the Circuit Court for Garrett County. But such was the state of accounts between McGraw and Showalter at the time that I do not believe either one of them could have been sure of the title to the money which was used in payment of the judgment.

"But instead of the judgment being released it was entered on January 18th, 1915, to the use of H. W. Showalter, and by him on February 9, 1915, assigned to the use of the First National Bank of Oakland as additional collateral for Showalter's notes, which were then running at the bank. Let us examine closely the evidence as to how and why this was done, and what knowledge McGraw had of the matter. Mr. McGraw himself says he had no knowledge of this assignment until November, 1915. He was a man of very extensive and complicated business interests, owing a large number of debts evidenced by judgments, notes and mortgages and open accounts. The details of these would be beyond the capacity of any memory to remember. This may explain the uncertainty as to dates and places in his testimony. It is shown to be a fact that Showalter authorized the entering of the Camden judgment to his use and the subsequent assignment of it by his authority to the First National Bank of Oakland, as additional collateral to some notes of his discounted there. Showalter was the channel through which the judgment was paid, and it was quite natural that the attorney for the Union Trust Company would inquire if it was to be entered to his use. Showalter's explanation of this—that he supposed it had been entered to his use by Col. McGraw, *for reasons of his own* (page 15 of the first

depositions), but that he was never authorized by McGraw to do this, is contradicted by the evidence of Mr. Sincell, who says that Showalter authorized the entry to his use to be made, and this seems very probable, but the question of Col. McGraw's knowledge and approval of the action is a very different one. The first evidence of this, outside of Col. McGraw, is that of Mr. Showalter (page 19 of the first commission), who says in answer to the 16th interrogatory (page 19 of the evidence of April 25, 1916), that Hechmer knew of the Deer Park property against the creditors of McGraw. Hechmer denies promising in November, 1915, for Mr. McGraw that the judgment would be paid if a postponement of the sale was granted, but he used language in his admitted conversation and in the letter of November 3rd, 1915, calculated to make one who was asking about the Camden judgment believe that Mr. McGraw would pay it, and Mr. Sincell and Mr. Sliger both are positive that he made this promise. Hechmer admits that he knew of the assignment to Showalter at the time it was made (page 23 of the first testimony, filed April 25, 1916), but denies knowledge of the subsequent assignment to the bank. Now the relations between these three persons, McGraw, Showalter and Hechmer, were of such a nature that I think it is fair to assume that what was known to one about so important a matter was known to all. Hechmer says he said he would consult his principal, and doubtless he did. At that time it suited Col. McGraw to have the judgment stand in the name of Showalter. The latter was his close friend and financial backer, and his explanation of the transfer to him of the judgment—to keep the other creditors of McGraw from proceedings against the Deer Park property—seems in all respects probable. Showalter could hardly have invented that reason. Without an understanding with McGraw, he would not have so dealt with the judgment. The other inconsistencies and discrepancies in the testimony of those witnesses

show the fallibility of their memory, and the circumstances of each (McGraw being in straits and Showalter being amply solvent and Hechmer the confidential and general agent of McGraw) make it extremely probable that the arrangement of the assignment was made for the convenience of McGraw and to save the Deer Park property from other judgment creditors, who would have been apt to proceed against it, if the Camden judgment had been entered satisfied. McGraw, having ample confidence in Showalter, and doubting nothing of his financial ability, was satisfied to let him have record title to the judgment. McGraw's transfer of the judgment was a waiver of his right to have it cancelled. He deliberately paid the judgment and yet kept it alive for his own purposes. Presently, however, Showalter has need of protection from attaching creditors, and taking advantage of his possession of the *indicia* of title of the judgment he assigns it to the bank as additional collateral for his indebtedness. It is not pretended that the bank, except through Sincell, knew that the judgment had been paid by McGraw's money, and he vigorously denies that he ever knew it. The other evidence, and the letter of Hechmer of November 3, 1915, bear out his denial.

"Sliger and Thayer are not alleged to have known of the claim of McGraw. Under these circumstances the bank took the assignment from Showalter. McGraw, having put Showalter in the position where he could use the judgment for his own purposes, if he wished to do so, can not complain if he actually did so use it. The existence of the debt from Showalter to the bank is amply sufficient consideration for the turning over of additional collateral. Besides, the threatened attachments against Showalter had somewhat alarmed the bank and it was demanding cover. Showalter assigned the judgment, and the bank's anxieties seem to have been allayed. It took no proceedings to realize on its collateral or to secure itself by

judgment. In the meantime Showalter came to financial grief, and when the bank came to realize on the judgment it was prevented by injunction.

"A consideration of all the testimony seems to make it reasonably clear that Col. McGraw so acted with the judgment as to preclude now his obtaining the aid of equity to prevent its collection from his property. He is a lawyer and a business man of large and extremely varied experience. It is no hardship upon him to hold that if he voluntarily or carelessly allowed a third person to hold for many months record title to his property, and especially if that was done to keep his own creditors from getting at it, he can not now ask a Court of Equity to extricate him from a position of more than doubtful propriety, into which he allowed his duly authorized agent to place him. There· need be no citation of authorities to establish this position if the facts are correctly found by the Court. The bill will therefore be dismissed and the injunction dissolved."

For the reasons we have stated and upon the principles announced in the opinion of the Court below, we will affirm the order appealed from.

*Order affirmed, with costs to the appellee.*